## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL MCKEON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **14 CV 2084** |
| | ) | |
| v. | ) | **Judge John Z. Lee** |
| | ) | |
| **THE CITY OF MORRIS and MORRIS** | ) | |
| **POLICE OFFICERS DUSTIN SEALE** | ) | |
| **(STAR #111) and PAUL BURKE** | ) | |
| **(Star #122),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael McKeon suffered a broken left leg during an arrest by City of Morris police officer Dustin Seale. McKeon now brings suit against Seale and Morris for excessive use of force pursuant to 42 U.S.C. § 1983. The parties dispute the events that led to McKeon's injury. McKeon argues that his injury was the direct result of a martial-arts kick delivered by Seale to the inside of McKeon's left leg. To support this argument, McKeon has retained Steven Rundell, a biomechanical engineer.

For their part, Defendants argue that no kick took place, but that McKeon's injuries are the result of twisting forces on the knee suffered during a trip-pull-and-shove takedown maneuver necessitated by McKeon's conduct. Defendants have retained Mark Hutchinson as an expert to support this version of events and to rebut the testimony of Dr. Rundell.

Each party has moved to bar the testimony of the opposing expert [54] [60]. For the following reasons, the Court denies Defendants' motion and grants in part and denies in part McKeon's motion.[1]

**Background**

On October 17, 2013, Seale arrested McKeon. Defs.' L.R. 56.1(a)(3) Stmt., Ex. 7, Incident/Investigation Report at 3–4, ECF No. 58. During the arrest, McKeon did not put his arms behind his back when instructed. Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶¶ 2–3, ECF No. 62. Plaintiff then felt a blow one inch below his left kneecap and was brought down to the ground by Seale. *Id.* 5–6. Seale testified that he put his leg in front of McKeon and brought him to the ground. Defs.' L.R. 56.1(a)(3) Stmt. ¶ 47. McKeon suffered a medial tibial plateau fracture and a left proximal fibula fracture. Defs.' L.R. 56.1(a)(3) Stmt. ¶ 57. The parties dispute what caused his injury.

To support his argument that the kick caused his injury, McKeon has offered Steven Rundell, Ph.D., as an expert witness. Dr. Rundell is a "biomechanical engineer with a Ph.D. in biomedical engineering, who has spent his entire career studying, analyzing and rendering mechanism of injury opinions." Pl.'s Resp. Defs.' Mot. Exclude at 2, ECF No. 66. Biomechanics is "the science concerned with the actions of forces, internal and external, on the living body." Defs.' Mot. Exclude, Ex. 2, Rundell Report at 25, ECF No. 60.

Dr. Rundell has concluded that McKeon's injuries were likely the result of a direct blow to the inside of the knee and that such a blow is consistent with

---

[1] Defendants have also filed a motion for summary judgment. This Court concurrently rules on that motion in a separate opinion.

McKeon's version of events but not with Defendants'. Pl.'s Resp. Defs.' Mot. Exclude at 2. To reach this result, Dr. Rundell created a three-dimensional reconstruction of McKeon's leg from various CT scans. Defs.' Mot. Exclude, Ex. 1, Rundell Dep. at 58–60. Dr. Rundell then consulted the diagnoses of McKeon's doctors together with a peer-reviewed article on tibial plateau fractures to determine that McKeon's fracture was a Schatzker Type IV tibial plateau fracture. Defs.' Mot. Exclude, Ex. 2, Rundell Report at 29. Dr. Rundell explained that this sort of injury is generally caused by axial compressive loading and varus rotation. *Id.* at 30. Dr. Rundell then referred to studies on pedestrian-vehicle collisions and concluded that axial compressive loading and varus rotation are caused by direct impact to the inside of the knee, consistent with McKeon's hypothesis of a martial-arts style kick. *Id.* at 31–32.

Defendants, however, claim McKeon's fractures were caused by "Seale locking out Plaintiff's left leg while simultaneously pulling him to the ground." Defs.' Resp. Pl.'s Mot. Exclude at 6, ECF No. 68. Defendants have offered Mark Hutchinson, M.D., as an expert witness to support this argument and to rebut the conclusions of Dr. Rundell. Dr. Hutchinson is an orthopaedic surgeon with over 23 years of experience treating knee injuries. *Id.* at 8.

Dr. Hutchinson concluded that a direct blow could not have caused McKeon's injuries. *Id.* at 9. To arrive at this conclusion, Dr. Hutchinson relied on his experience and pointed out that McKeon's case lacks the bruising or fracture pattern that would accompany a direct blow. Pl.'s Mot. Exclude, Ex. 1, Hutchinson

Report at 4, ECF No. 54. Dr. Hutchinson relied on his experience with similar knee injuries in skiers to conclude that the necessary axial load and varus rotation for McKeon's fracture was more likely caused by the events described by Defendants. *Id.* at 4–5.

## Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert witnesses. Experts are qualified by their "knowledge, skill, experience, training, or education" and should "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The testimony of an expert witness must be "based on sufficient facts or data" and the "product of reliable principles and methods" that have been "reliably applied . . . to the facts of the case." *Id.*

The district court must ensure that Rule 702's criteria are satisfied before allowing an expert to testify. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). In practice, this means asking of the expert the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The proposed testimony must meet "the *Daubert* threshold of relevance and reliability," but "the accuracy of the actual evidence is to be tested before the jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). The expert must be qualified, his reasoning or methodology must be scientifically reliable, and his testimony must assist the trier of fact in understanding the evidence or determining a factual issue. *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014).

Ultimately, the decision to admit an expert "is dependent upon the facts and circumstances of the particular case." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007). The party wishing to admit an expert bears the burden of proving their expert meets Rule 702's requirements. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The opposing party "can take issue with both the qualifications and the methodology of the proposed expert." *Id.* District courts have broad discretion in determining the admissibility of witness testimony. *Lapsley*, 689 F.3d at 810.

**Analysis**

**I.      Plaintiff's Expert Steven Rundell, Ph.D.**

**A.      Rundell's Qualifications**

The first of Defendants' three arguments to bar Dr. Rundell's testimony challenges his qualifications. They first argue that Dr. Rundell's field, biomechanical engineering, is not relevant to this case because it is not about diagnosing injuries, only "characterize[ing]" them. Defs.' Mot. Exclude at 3. Biomechanical engineers, however, are qualified to testify on injury mechanisms, especially when the engineer's experience in the field is extensive. *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 739–40, 742 (N.D. Ill. 2005). While Defendants are correct that Dr. Rundell is not qualified to diagnose McKeon's injuries, he fulfills a different role in this case. Plaintiffs have retained Dr. Rundell to interpret the diagnoses of McKeon's treating physicians in order to opine on the likely mechanisms of McKeon's injuries. That is precisely within the field of biomechanics.

Defendants also argue that Dr. Rundell in particular is not qualified because he has worked only on tibial plateau fractures, not *medial* tibial plateau fractures. While an expert's experience should obviously be relevant to the issue at hand, Defendants demand too much specificity. "Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). Dr. Rundell is familiar with the mechanics of bone fractures generally and has worked on cases involving tibial plateau fractures. This qualifies him to apply more general biomechanical principles to the specifics of this case.

## B.    Rundell's Methodology

Defendants next argue that Dr. Rundell's report rests on unreliable methodology. In reaching his conclusion about what caused the injury, Dr. Rundell reviewed studies on the type of fracture at issue and applied their findings to the information about McKeon's injury. Generally, a review of scientific data generated by others in the field is sufficient methodology. *See Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996). Defendants nevertheless argue that Dr. Rundell's review was flawed because (1) his report ignored a more recent, contradictory article and (2) the studies he did rely on involved vehicle-pedestrian collisions.

The first objection is not about methodology at all, but instead about the conclusion that Dr. Rundell reached. His methodology of reviewing the literature on the type of fracture at issue and comparing it to the facts in this case is sound. *See Cummins*, 93 F.3d at 369. If Defendants disagree about the conclusion that Dr. Rundell reaches based on the literature, or if they think he should have chosen a

6

different study to rely on, they can address that on cross-examination. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013) ("An expert may provide expert testimony based on a valid and properly applied methodology and still offer a conclusion that is subject to doubt.").

Similarly, his choice to rely on articles dealing with pedestrian-vehicle accidents does not demonstrate a flawed methodology. In his report, Dr. Rundell determined that the fracture McKeon suffered is similar in type to that suffered by pedestrians who are hit by vehicles at the knee joint. *See* Defs.' Mot. Exclude, Ex. 2, Rundell Report at 31. Defendants' objection boils down to the fact that these studies involve an impact to the knee that they do not think was present in this case. *See* Defs.' Mot. Exclude at 8. Although they are free to test Dr. Rundell's conclusion that the fracture could have only happened with an impact to the knee at trial, Defendants may not exclude Dr. Rundell's testimony altogether on this basis.

### C.    Whether Rundell Would Assist the Trier of Fact

Lastly, Defendants argue that Dr. Rundell would impede rather than assist the trier of fact because his conclusion is inconsistent with the facts of what happened. McKeon testified that he felt a blow beneath his kneecap; Defendants argue that this means the blow was on the front part of the lower leg and that Dr. Rundell's conclusion that the blow was on the inside part of the leg is inconsistent and confusing. The level of medical precision that Defendants try to impute on McKeon's deposition testimony is unrealistic. First off, the kneecap is large enough that even a spot one inch below the interior part of the kneecap could be considered the anteromedial part of McKeon's knee. But regardless, McKeon is not a medical

professional, and it would be inappropriate to constrain his testimony to mean that the impact he felt was exclusively to the front of his leg. As such, Dr. Rundell's interpretation is plausible, and the jury will have to interpret his testimony together with the rest of the record.

Defendants also argue that Dr. Rundell's description of the kick is inconsistent with the physical positions that other witnesses have described. In analyzing the type of kick that could cause the fracture that McKeon sustained, Dr. Rundell watched a video of Seale demonstrating a Ryukyu Kempo kick. *See* Dustin Seale, *Dustin Seale's Kyusho Combatives - Naihanchi Bunkai (from Berlin, Germany Seminar)*, YouTube (Jun. 17, 2013), https://www.youtube.com/ watch?v=bs8V_DAFkew. In the video Seal demonstrates a kick to the inside of his partner's leg. All the kicks Seale demonstrates begin with Seale and his partner facing each other. Since McKeon's own testimony indicates that Seale was standing somewhere behind him, Defendants argue that Dr. Rundell's description of the kick is inconsistent with all descriptions of the events. That argument, however, misstates how Dr. Rundell used the video. Dr. Rundell testified that he was not using the video as a basis of how Seale could have kicked McKeon given his body position. *See* Defs.' Mot. Exclude, Ex. 1, Rundell Dep. at 131:5–18. Instead, the video was a demonstration of the type of force that could have caused the fracture. Whether such a kick could have been delivered from where Seale was standing is a separate question that Defendants are free to ask Dr. Rundell at trial. As such, the Court finds that Dr. Rundell's testimony would be helpful to the jury.

The Court therefore denies the motion to bar Dr. Rundell's testimony.

## II.     Defendants' Expert Mark Hutchinson, M.D.

### A.     Hutchinson's Rebuttal of Rundell

McKeon seeks to bar those parts of Dr. Hutchinson's testimony that he claims unfairly challenge Dr. Rundell. A rebuttal expert like Dr. Hutchinson is limited to contradicting or rebutting evidence on the same subject matter as the rebutted expert. *Butler v. Sears Roebuck & Co.*, No. 06 C 7023, 2010 WL 2697601, at *1 (N.D. Ill. July 7, 2010).

Initially, McKeon objects to the following opinion contained in Dr. Hutchinson's report:

> [Dr. Rundell] is not an orthopaedic surgeon, he is not a radiologist, he is not trained or licensed to diagnose or treat tibial plateau fractures, and he has no experience in diagnosing, caring for, or treating patients with tiabial plateau fractures. He is not licensed or trained to interpret medical records or images.

Pl.'s Mot. Exclude, Ex. 1, Hutchinson Report at 3. Defendants justify the statement by arguing that Dr. Hutchinson was merely trying to explain how the two experts came to the problem from "different perspective[s]." *See* Defs.' Resp. Pl.'s Mot. Exclude at 4. The Court agrees that Dr. Hutchinson can discuss why, as an orthopedic, he believes he is qualified to offer an expert opinion in this case. He also can testify how he, as an orthopedic surgeon, went about analyzing this case. He can go so far as to discuss how his approach, as an orthopedic surgeon, differs from that of Dr. Rundell. However, Dr. Hutchinson is not qualified to discuss the extent of Dr. Rundell's professional background and training, or whether it renders him

qualified or unqualified to offer an expert opinion in this case, and Dr. Hutchinson is barred from doing so.

Next, McKeon seeks to bar the following opinions contained in Dr. Hutchinson's report:

> Mr. Rundell definitively concluded that the only reasonable mechanism that could have caused the injury pattern in question was a kick creating a varus load to the medial knee. Despite his emphatic belief in this mechanism, the plaintiff never described a kick to the medial aspect of the knee; rather, the plaintiff describes some contact below his patella. Nowhere in the testimony of either the plaintiff or defendants is a kicking motion described. Notwithstanding these facts, Mr. Rundell claimed that there was no alternative cause to the plaintiff's fracture pattern than a kick to the medial aspect of the plaintiff's knee, "period".
>
> . . .
>
> Mr. Rundell's failure to consider history, alternative mechanisms, the absence of physical findings (medial bruising), and retroactive perspective (hypothesizing the recreation of mechanism of injury from the injury pattern alone) biases his perspective and leaves him dogmatic with only one option of injury rather than being open minded about other reasonable possibilities, especially in light of the evidence.

Pl.'s Mot. Exclude, Ex. 1, Hutchinson Report at 3.

Unlike the comments about Dr. Rundell's qualifications, these statements relate to conclusion that McKeon's expert reached. Dr. Hutchinson points out, for example, that the type of bruising that would occur under Dr. Rundell's hypothesis is lacking. The Court agrees with Defendants that there is nothing improper about Dr. Hutchinson's critique of Dr. Rundell's conclusions.

### B.    Hutchinson's Qualifications

McKeon argues that Defendants have failed to demonstrate that Dr. Hutchinson is a qualified expert. In particular, McKeon argues that Dr.

Hutchinson's credentials as an orthopaedic surgeon qualify him to treat injuries, but not necessarily determine their cause.

The process through which doctors rule out potential causes of an injury—which is called differential etiology—can be the basis for an expert opinion. *See Myers v. Ill. Central R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The admissibility of a physician's causation opinion depends on the particular methodology used by the doctor to rule in or rule out causes. *See id.* Accordingly, the Court turns to Dr. Hutchinson's methodology.

### C.  Hutchinson's Reasoning

Plaintiff argues that Dr. Hutchinson does not make a sufficient showing of his reasoning. An expert's testimony is not unreliable simply because it is founded on his experience rather than on data. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). But an expert who relies on experience "must explain why the application of his prior experience to the facts at hand compel his final conclusions." *Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, No. 09 C 2513, 2011 WL 4840965, at *3 (N.D. Ill. Oct. 12, 2011) In offering his testimony, Dr. Hutchinson needs to apply the same level of intellectual rigor as other doctors would in their practice. *Kumho Tire,* 526 U.S. at 152.

Dr. Hutchinson examined medical records and scans of McKeon's injuries and relied on his experiences in treating tibial plateau fractures and knee injuries in skiers in forming his opinion. Pl.'s Mot. Exclude, Ex. 1, Hutchinson Report at 4–5. Dr. Hutchinson explained that, had McKeon's injury been caused by a kick, there would be a "compression of the medial tibial wall . . . , a split compression or central

compression of the medial tibial plateau only, and absence of compression of the lateral tibial plateau." *Id.* at 4. Contrary to McKeon's argument, Dr. Hutchinson's analysis is more than bottom-line conclusions. He describes the type of physical evidence that would be present if McKeon's version of the events had occurred and explains why he believes, based on the lack of that evidence, that Defendants' version is more likely.

**D.      Whether Hutchinson Would Assist the Trier of Fact**

Lastly, McKeon argues that Dr. Hutchinson's opinions conflict and would therefore impede the trier of fact. McKeon first points to the following two sentences from the report as evidence that Dr. Hutchinson contradicts himself. Initially, Dr. Hutchinson states that he has "not drawn an opinion about which scenario [(McKeon's or Defendants')] is the most likely or the truth." Pl.'s Mot. Exclude, Ex. 1, Hutchinson Report at 2. Dr. Hutchinson later states: "it is my opinion . . . that it was one of these alternate scenarios [in which McKeon fell or twisted his knee] that actually caused the plaintiff's comminuted fracture." *Id.* at 4.

These cherry-picked quotations are made clear when put into context. The first quotation is from the section of Dr. Hutchinson's report in which he's talking about the contradictory deposition testimonies of McKeon, Seale, and Burke. The Court reads Dr. Hutchinson's statement as referencing the fact that, given his position as an expert witness, he will not make credibility determinations based on the different accounts. The second quotation that McKeon cites comes from the "Assessment" section of Dr. Hutchinson's report and is best understood as a conclusion reached after having applied his methodology. Thus, there is no inherent

contradiction as to Dr. Hutchinson's position, much less one that would warrant barring his testimony.

McKeon also takes issue with another apparent contradiction. Dr. Hutchinson says in one part of his report that a kick was not the exclusive or most likely cause of McKeon's injuries. *Id.* at 3–4. Dr. Hutchinson then states that the injury displays none of the characteristics of a direct blow. *Id.* at 4. Plaintiff argues that these two statements are incompatible and confusing, because first Dr. Hutchinson says that a kick is unlikely but then that it is outright impossible.

Once again, the context of these quotes matters. In the first quote, Dr. Hutchinson is responding to Dr. Rundell and opining that the fracture pattern is not exclusive to injuries caused by a kick. Then, after pointing to other physical evidence that should be present had McKeon been kicked (for example, compression of the medial tibial wall), Dr. Hutchinson concludes that the kick is not likely. The Court disagrees with McKeon and does not find Dr. Hutchinson's report contradictory.

## Conclusion

For the reasons set forth above, the Court denies Defendants' motion to bar Dr. Rundell [60]. McKeon's motion to bar Dr. Hutchinson [54] is granted in part and denied in part. Dr. Hutchinson is barred from making statements about Dr. Rundell's lack of qualifications to testify about the cause of the injury. The motion is denied in all other respects.


**IT IS SO ORDERED.**                **ENTERED   9/26/16**

_____
**John Z. Lee**
**United States District Judge**